IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NICHOLAS KUHAR, et. al.,<br><br>    Plaintiffs,<br><br>v.<br><br>PETZL COMPANY, et. al.,<br><br>    Defendant. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action No.<br>16-395 (JBS/JS)<br><br>**OPINION** |

APPEARANCES:

Brett Cody Schneider, Esq.
Kevin P. McCann, Esq.
Matthew Weng, Esq.
Shanna McCann, Esq.
CHANCE AND MCCANN
201 West Commerce Street
Bridgeton, NJ 08302
    Attorney for Plaintiffs

James D. Burger, Esq.
Robert George Devine, Esq.
WHITE & WILLIAMS LLP
457 Haddonfield Road, Suite 400
Cherry Hill, NJ 08002-2220
    Attorney for Defendants Petzl America, Big Bang SAS and
    Zedel SAS

C. Scott Toomey, Esq.
LITTLETON JOYCE UGHETTA PARK & KELLY LLP
201 King of Prussia Road
Suite 220
Radnor, PA 19010
    Attorney for Defendant Thompson Manufacturing

**SIMANDLE, District Judge:**

## I. INTRODUCTION

This products liability action concerns an allegedly defective safety harness which caused serious injury to Nicholas Kuhar when it snapped. Plaintiffs Nicholas and Julie Kuhar bring claims against the manufacturers and sellers of the Micrograb harness. This case comes before the Court on motions brought by three Defendants – Thompson Manufacturing, Zedel SAS and Big Bang SAS – to dismiss the Amended Complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2), Fed. R. Civ. P. [Docket Items 56 & 57]. For the reasons that follow, the Court will grant Zedel and Big Bang's motion, and will deny Thompson Manufacturing's motion without prejudice to their right to renew their motion after jurisdictional discovery has taken place.

## II. BACKGROUND

On December 24, 2013, Plaintiff Nicholas Kuhar was cleaning gutters at a house in Alloway when the "Micrograb" wire core flip-line safety harness with which he had secured himself failed, causing him to fall thirty seven feet onto the concrete below. (Amended Complaint [Docket Item 45] at Factual Allegations ¶ 4.) Mr. Kuhar sustained serious injuries from the fall including, but not limited to, a fractured hip, pelvis, thumb, and three vertebrae, and a burst fracture of his spinal cord. (Id.) Plaintiffs allege that the harness in question was designed, produced, and sold by Defendants Petzl Company, Petzl

America, Bailey's Corporation, Big Bang SAS, Zedel SAS, Thompson Manufacturing, and Uintah Fastener & Supply. (See id. at Summary of the Action ¶¶ 2-8.) Those Defendants who have answered the Amended Complaint have asserted cross-claims for contribution and indemnification against all other Defendants. (See Defendant Bailey's Corporation Answer [Docket Item 47], Defendant Uintah Fastener & Supply Answer [Docket Item 53] and Defendant Petzl America, Inc. Petzl Company's Answer [Docket Item 61].)

### III. STANDARD OF REVIEW

To defeat a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), Fed. R. Civ. P., "the plaintiff bears the burden of establishing with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction." Provident Nat. Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987). Ultimately, to meet its burden to demonstrate that the exercise of jurisdiction over the parties would be proper, the plaintiff must proffer evidence of jurisdiction through sworn affidavits or other competent documents. See Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009); IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 257 (3d Cir. 1998); In re Nazi Era Cases Against Ger. Defendants Litig., 320 F. Supp. 2d 204, 214-15 (D.N.J. 2004).

3

The Court of Appeals for the Third Circuit directs district courts to permit "jurisdictional discovery" unless the plaintiff's jurisdictional claims appear "clearly frivolous." Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003) (quoting Mass. School of Law at Andover, Inc. v. American Bar Ass'n, 107 F.3d 1026, 1042 (3d Cir. 1997)). Indeed, if "a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,' the plaintiff's right to conduct jurisdictional discovery [must] be sustained." Id. (internal citations omitted). Jurisdictional discovery should not, however, serve as a "fishing expedition" into the underlying merits, all while "under the guise of jurisdictional discovery." LaSala v. Marfin Popular Bank Public Co., Ltd., 410 Fed. Appx. 474, 478 (3d Cir. 2011).

**IV. DISCUSSION**

**A. Personal Jurisdiction Generally**

The personal jurisdiction inquiry traditionally requires an examination of whether its exercise over a defendant is permissible under both the state's long-arm statute and the Due Process Clause of the Constitution. But if the state's personal jurisdiction statute permits the exercise of jurisdiction to the fullest limits of due process, as is the case here in New Jersey, the two jurisdictional inquiries in this case collapse

4

into one: whether the exercise of jurisdiction comports with due process. Imo Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998); DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 284 (3d Cir. 1981).

As has often been repeated, the Due Process Clause of the Constitution permits the exercise of personal jurisdiction when there are "minimum contacts" between a non-resident defendant and the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." J. McIntyre Machinery, Ltd. V. Nicastro, 131 S. Ct. 2780, 2787 (2011) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). A court may exercise either general jurisdiction or specific jurisdiction over a defendant as long as it is consistent with that principle. General jurisdiction may be asserted over a foreign corporation even when the cause of action has no relation to those contacts if the defendant's contacts with the forum are so "continuous and systematic" as to render them essentially "at home" in the forum state. Daimler AG v. Bauman, 134 S. Ct. 746, 754 (2014); Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011); Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). If an out-of-state defendant's contacts with the forum are insufficiently substantial to establish general jurisdiction, a court may still assert specific jurisdiction if

the suit "aris[es] out of or relate[s] to the defendant's contacts with the forum." Helicopteros, 466 U.S. at 414, n.8. The inquiry here becomes whether the defendant has "purposefully directed" his activities at residents in the forum state, Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985), or whether there was "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).

**B. Thompson Manufacturing**

Thompson Manufacturing, Inc. ("TMI") produced and sold a component part to Petzl America, Inc. ("Petzl") that was allegedly used the Petzl Micrograb device that is the subject of the present lawsuit. (Affidavit of Travis Lane ("Lane Aff.") ¶ 19.) TMI was incorporated in and maintains its principal place of business in the State of Utah, where its corporate offices and manufacturing facilities are also located. (Id. ¶ 2.) TMI's President, Travis Lane, affirms that TMI does not own, rent, lease, occupy or maintain any property in the State of New Jersey; does not employ anyone or conduct any operations in the State of New Jersey; does not sell, advertise, market or deliver its products to, or derive revenue from sales of its products from, the State of New Jersey; has not paid income, property or

any other tax to the State of New Jersey, nor is it registered or licensed to conduct business in the state, nor has it authorized anyone to act as its agent in the state; and does not and has never obtained banking, accounting or legal services from companies located in the State of New Jersey. (Id. ¶¶ 2-15.) On the basis of these representations, TMI argues that it is not subject to general jurisdiction in New Jersey, when its activities (or lack thereof) in the state are measured against Daimler, 134 S. Ct. 746, and that exercising specific jurisdiction in New Jersey would be inappropriate because the company had no knowledge that its products would reach New Jersey through the stream of commerce, World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 298 (1980), and because it has not "purposefully directed" any of its business activities at the state, Burger King, 471 U.S. at 472.

Both Plaintiffs and Defendant Petzl oppose TMI's motion to dismiss, arguing that there is evidence that a related company, Rock Exotica, sells similar or identical products in the State of New Jersey, and that therefore TMI must be aware that its products are incorporated into devices that are sold in New Jersey. Plaintiffs and Petzl represent that the climbing devices shown on Rock Exotica's website (see Exhibit C to Petzl's Opposition Brief) are the same as those purchased by Petzl from TMI, and that Rock Exotica's website directs consumers to two

7

authorized dealerships in New Jersey where they can purchase Rock Exotica products (Ex. D). To support their proposition that Rock Exotica may be "a mere alter ego of TMI, and that TMI may control and/or direct sales" from Rock Exotica (Petzl Opp. Br. at 2), these parties point to evidence that TMI and Rock Exotica share a founder and owner, Rock Thompson (Ex. B at 1, 2 & 5); that the two companies' manufacturing facilities appear to be located at the same Freeport Center in Clearfield, Utah (compare Ex. C with Ex. E); that the two companies apparently share a phone number and website (id.); and that a number of employees represent online that they are affiliated with both companies (see Ex. F).

It is plain that Plaintiffs have not alleged facts sufficient to find that an exercise of general jurisdiction over TMI would comport with due process, but whether specific jurisdiction exists is a closer question that warrants jurisdictional discovery. Even where a corporation does not come into direct contact with the forum state, "minimum contacts" may exist and specific jurisdiction may lie where the corporation "delivers its products into the stream of with the expectation that they will be purchased by consumers in the forum state." World-Wide Volkswagen, 444 U.S. at 298. In the absence of a clear directive as to what level of engagement the corporation must have with the forum state in order to rise to the level of

constitutionally adequate "minimum contacts" under the stream of commerce theory, the Third Circuit Court of Appeals instructs courts to consider the standards enunciated in the plurality opinions by Justices O'Connor and Brennan in Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano Cnty, 480 U.S. 102 (1987). See Pennzoil Prods. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 205 (3d Cir. 1998). In practice, this means that courts first look for "the placement of a product into the stream of commerce . . . accompanied by some additional conduct of the defendant that may indicate an intent or purpose to serve the market in the forum State," such as "designing the product for the market in the forum State . . . [or] establishing channels for providing regular service to customers in the forum State." Pennzoil, 149 F.3d at 206 (citing Asahi Metal, 480 U.S. at 112 (O'Connor, J.)). In the alternative, courts then apply Justice Brennan's standard, which finds minimum contacts where the "defendant . . . has placed goods in the stream of commerce [and] benefits economically from the retail sale of the final product in the forum State, and indirectly benefits from the State's laws that regulate and facilitate commercial activity." Pennzoil, 149 F.3d at 207 (citing Asahi Metal, 480 U.S. at 117 (Brennan, J., concurring)).

The evidence adduced by Plaintiffs and Petzl at this stage connecting Defendant TMI with non-party Rock Exotica – that the

parties share a founder, a phone number, and a website, appear to be located at the same place, and may share employees and common ownership - is not enough to establish personal jurisdiction over TMI by a preponderance of the evidence, even if there would be enough evidence of connections with the state of New Jersey to establish personal jurisdiction over Rock Exotica. Even where a subsidiary corporation may have sufficient contacts with the forum state to establish personal jurisdiction, a plaintiff must show "more than mere ownership" in order to impute those contacts to the parent company. Seltzer v. I.C. Optics, Ltd., 339 F. Supp. 2d 601, 609 (D.N.J. 2004); Pfundstein v. Omnicom Group, Inc., 666 A.2d 1013, 1016 (N.J. App. Div. 1995). "The activities of a parent company are imputed to the subsidiary only if the subsidiary is the parent's agent or alter ego so that the independence of the separate corporate entities was disregarded." Fisher v. Teva PFC SRL, 212 Fed. Appx. 72, 76 (3d Cir. 2006) (citing Lucas v. Gulf & Western Indus., Inc., 666 F.2d 800, 806 (3d Cir. 1981)).

Here, Plaintiffs' and Petzl's position that Rock Exotica may be the alter ego of TMI is not "clearly frivolous," and the parties have presented facts "with reasonable particularity" that suggest the possible existence of TMI's requisite contacts with New Jersey through its relationship with Rock Exotica. Toys "R" Us, 318 F.3d at 456. Plaintiffs and Petzl are entitled to

jurisdictional discovery in order to flesh out the contours of the relationship between TMI and Rock Exotica, and the companies' activities in New Jersey. Defendant TMI's motion to dismiss for lack of personal jurisdiction will be denied without prejudice to renewal following the opportunity for jurisdictional discovery.

**C. Zedel SAS and Big Bang SAS**

Zedel SAS ("Zedel") and Big Bang SAS ("Big Bang") are French companies; Zedel represents that it assisted Petzl America, Inc. in designing the Micrograb device at issue in this case from its location in Crolles, France, and Big Bang represents that it "has absolutely no connection to the product." (Defendants Zedel & Big Bang's Motion to Dismiss at 11; see also Affidavit of Bernard Bressoux ("Bressoux Aff.") and Affidavit of Paul Petzl ("Petzl Aff.").) Both companies were incorporated under the laws of France and maintain their sole locations in Crolles, France. (Bressoux Aff. ¶ 2; Petzl Aff. ¶ 2.) Representatives of both companies affirm that neither Zedel nor Big Bang sell the Micrograb device; that neither company owns, leases, possess or uses real property in the State of New Jersey; does not employ anyone or conduct any operations in the State of New Jersey; does not sell, advertise, market or deliver its products to the State of New Jersey, by either mail or in person, or generate revenue from the State of New Jersey; has

never filed tax returns or administrative reports with any agency in the State of New Jersey; has never purchased products, supplies or raw materials within the State of New Jersey; does not maintain any agents, employees, subsidiaries, or officers within the State of New Jersey, nor has it authorized anyone to act as its agent in the state; and does not and has never obtained banking, accounting or legal services from companies located in the State of New Jersey. (Id. ¶¶ 2-16.) On the basis of these representations, Zedel and Big Bang assert that they are subject to neither general nor specific personal jurisdiction in New Jersey.

Plaintiffs oppose the French companies' motion to dismiss, arguing that there is evidence that a sufficient corporate parent/subsidiary relationship between Zedel and Petzl and between Big Bang and Petzl may exist to render the exercise of specific jurisdiction proper. Plaintiffs point to Petzl America, Inc.'s corporate disclosure statement in this case certifying that "its ownership rests 100% with Big Bang S.A.S., a French domiciled holding company" and two certificates purportedly filed with the European Commission on behalf of "Zedel trading as Petzl."[1] (See attachments to Plaintiffs' Opposition Letter Brief.)

---

[1] Defendants assert that Plaintiffs either misrepresent or misunderstand the corporate entities in this case, and that only

Unlike the first motion to dismiss, above, where Plaintiffs and Petzl presented details from which a court could find that TMI and Rock Exotica may share more than common ownership, Plaintiffs in this instance have come forward with nothing, let alone allegations with "reasonable particularity," that suggest that these French companies are in an alter ego or agency relationship with Petzl. Plaintiffs' position that a sufficiently close corporate relationship exists based only on (i) an admission that Big Bang is the 100% owner of Petzl America, Inc. and (ii) foreign certificates of indeterminate origin and significance borders on "clearly frivolous." None of these facts suggest that "the independence of the separate corporate entities was disregarded" such that Petzl's New Jersey contacts could be fairly imputed to the French companies. Lucas, 666 F.2d at 806. Plaintiffs will not be permitted to pursue jurisdictional discovery against these parties, and their motion to dismiss for lack of personal jurisdiction will be granted.

---

"Petzl America, Inc." is a valid legal entity: "Petzl Company" and "Petzl," according to Defendants, do not exist. (Defendants Zedel & Big Bang's Reply Brief at 1.) For the purposes of the instant motion, the Court need not decide whether "Zedel trading as Petzl" refers to Petzl America, Inc. because even if that is assumed true, that would not necessarily mean, or even logically imply, that Zedel and Petzl America, Inc. are alter ego corporations and that a Court could fairly impute Petzl America, Inc.'s New Jersey contacts onto Zedel for the purposes of exercising personal jurisdiction.

## V. CONCLUSION

An accompanying Order will be entered.

**June 9, 2017**
Date

**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
U.S. District Judge