IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NICHOLAS KUHAR and JULIE KUHAR, <br><br> *Plaintiffs,* <br><br> v. <br><br> PETZL COMPANY d/b/a PETZL, PETZL AMERICA, INC., d/b/a PETZL, BAILEY'S CORPORATION, THOMPSON MANUFACTURING, UINTAH FASTENER & SUPPLY, QUALITY PLATING, UNLIMITED XYZ CORPORATIONS (fictitious entities) and UNLIMITED JOHN DOES (fictitious names), <br><br> *Defendants,* | CIVIL ACTION <br> NO. 1:16-cv-00395-JBS-JS <br><br> MOTION IN LIMINE TO EXCLUDE DEFENDANT BAILEY'S LIABILITY EXPERT TESTIMONY AND REPORT |

Motion Date: May 21, 2018
Oral Argument is Requested pursuant to L.Civ.R. 78.1

MATTHEW WENG, ESQ.
Chance & McCann, LLC
201 West Commerce St
Bridgeton, NJ 08302
856-451-9100
mweng@chancemccann.com
Attorney for the plaintiffs

TABLE OF CONTENTS

I. PRELIMINARY STATEMENT..........................................1

II. LEGAL ARGUMENT................................................2

    A. STANDARD FOR EXCLUSION OF EXPERT TESTIMONY...........2

    B. DOCTOR ELLIS'S OPINIONS MUST BE EXCLUDED BECAUSE THEY DO NOT RESULT FROM RELIABLE PRINCIPLES OR METHODOLOGIES......................................4

III. CONCLUSION...................................................8

TABLE OF AUTHORITIES

SUPREME COURT

    Daubert v. Merrill Dow Pharms., Inc., 509 U.S. 579 (1993)..................................................2,3,4

    Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999)..................................................................3

THIRD CIRCUIT COURT OF APPEALS

    Pineda v. Ford Motor Co., 520 F.3d 237 (3d Cir. 2008)..................................................................3

    Oddi v. Ford Motor Co., 234 F.3d 136 (3d Cir. 2000)..................................................................3

    Heller v. Shaw Industries, Inc., 167 F.3d 146 (3rd Cir. 1999)..............................................................3

    In re Paoli R.R. Yard PCB Litig., 35 F.3d 717 (3d Cir. 1994)..................................................................3

DISTRICT OF NEW JERSEY

    United States v. Schiff, 538 F. Supp. 2d 818 (D. N.J. 2008)..................................................................4

WESTERN DISTRICT OF PENNSYLVANIA

    Soldo v. Sandoz Pharms. Corp., 244 F. Supp. 2d 434 (W.D Pa. 2003)..............................................................4

FEDERAL RULES OF EVIDENCE

    702....................................................................................2,3

I.   PRELIMINARY STATEMENT

On December 24, 2013, plaintiff Nicholas Kuhar was working at a pole barn on his property in Cumberland County, New Jersey. At that time, Plaintiff was using a "Micrograb" device that he purchased from defendant Bailey's. A bolt in the Micrograb snapped, causing the product to fail and Plaintiff to fall approximately 40 feet to the ground.

On March 27, 2018, defendant Bailey's produced an expert report by Dr. J. Nigel Ellis, Ph.D. As explained in detail below, Dr. Ellis's report does not meet the standards set by F.R.E. 702 and the Daubert case. Specifically, Dr. Ellis indicated no scientific studies, industry standards, or other methodological steps he undertook to come to his opinions. He offers an opinion on the cause of the bolt failure despite not engaging in, reviewing, or attending any laboratory examinations. He offers an opinion about the lack of clarity in testimony, despite not being in any way qualified to opine on the reliability of witnesses.

Dr. Ellis has a Ph.D. in Photochemical Processes from the University of Manchester in England. His Bachelors and Masters degrees are from the same university in Chemistry. He is a Board Certified Safety Professional, a Professional Engineer, and a Board Certified Professional Ergonomist.

In his report, Dr. Ellis indicates that he reviewed:

1

- Relevant depositions of parties and witnesses
- The complaint
- Expert reports from co-defendants
- Photographs
- Equipment instructions.

Additionally, Dr. Ellis visited the site of the accident and reviewed the equipment at the plaintiff's attorney's office.

Dr. Ellis makes reference to various OSHA and ANSI standards as well. However, he does not detail what, exactly, these regulations state, nor how the specific aspects of the regulations apply to any aspect of the facts of this case. Specifically, he references the Code of Federal Regulations dealing with Occupational Health and Safety, ANSI standards that describe requirements for fall protection equipment, and OSHA regulations specifically referring to fall protection.

II. LEGAL ARGUMENT

    A.    STANDARD FOR EXCLUSION OF EXPERT TESTIMONY

Daubert v. Merrill Dow Pharms., Inc., 509 U.S. 579 (1993), and its progeny, along with F.R.E. 702, set out the requirements for admission of expert testimony. Briefly stated, those requirements are: (1) the witness must qualify as an expert; (2) the testimony or opinions must be reliable; and (3) the expert testimony or opinions must assist the trier of fact and "fit"

the facts of the case. Pineda v. Ford Motor Co., 520 F.3d 237, 244 (3d Cir. 2008). The decision to exclude expert testimony is within the Court's discretion. Heller v. Shaw Industries, Inc., 167 F.3d 146, 150 (3rd Cir. 1999).

This requirement applies to all types of expert testimony, not just purely "scientific" testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147, (1999). "Engineering testimony rests upon scientific foundations," Id. at 150, and a report based on nothing more than "training and years of experience as an engineer" is not admissible. Oddi v. Ford Motor Co., 234 F.3d 136, 158 (3d Cir. 2000).

The reliability prong mandates "that the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 742 (3d Cir. 1994) (quoting Daubert, 509 U.S. at 590). A court "is not required to simply 'take the expert's word for it.'" Soldo v. Sandoz Pharms. Corp., 244 F. Supp. 2d 434, 563 (W.D Pa. 2003).

As stated by F.R.E. 702, the opinions of the expert must also "help the trier of fact to understand the evidence or to determine a fact in issue." In other words, the expert testimony must also "fit"—that is, the court must determine that the opinion "is sufficiently tied to the facts of the case that

3

it will aid the jury in resolving a factual dispute." Daubert, 509 U.S. at 591. Expert testimony that does not relate to the specific issues before the trier of fact "is not relevant and, ergo, non-helpful." Id.

The Third Circuit has developed an eight-part test for evaluating the reliability or scientific validity of purported expert testimony: (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put. United States v. Schiff, 538 F. Supp. 2d 818, 833 (D. N.J. 2008) (quoting United States v. Mitchell, 365 F.3d 215, 235 (3d Cir. 2004)).

    B.    DOCTOR ELLIS'S OPINIONS MUST BE EXCLUDED BECAUSE THEY DO NOT RESULT FROM RELIABLE PRINCIPLES OR METHODOLOGIES

Dr. Ellis does not make reference to any tests or industry methods conducted on the bolt or any other evidence.

Ellis's opinions are:

1. Bailey's sold the Micrograb and generally sold arborist supplies. This is an undisputed fact that does not require expert testimony.

2. Bailey's sale of the flipline kip used was not the cause of a fractured bolt in the Petzl rope grab product (Micrograb). He does not outline in his report any metallurgical tests done or reviewed by him in order to come to this conclusion. Neither the OSHA nor ANSI standards pertain to the cause of failure for this specific bolt.

3. Bailey's shipments included product instructions for Petzl products. He does not outline what scientific or other expert processes he used to determine whether or not the Micrograb contained the required instructions.

4. The plaintiff has the responsibility to follow all instructions and labels. He does not identify what industry standards, codes, laws, or regulations he relied upon to come to this conclusion.

5. Petzl was responsible for the readability and legibility of the labels and instructions on the products. He does not identify what industry standards, codes, laws, or regulations he relied upon to come to this conclusion.

6. The proper fitting of the nut and bolt to the Micrograb should have been accomplished without user

5

involvement unless that person was as highly skilled as a manufacturer representative. He does not identify what industry standards, codes, laws, or regulations he relied upon to come to this conclusion.

7. There was a lack of clarity of the witnesses to describe the plaintiff's fall. In his *curriculum vitae,* there are no degrees, certifications, or relevant experience that would permit him to opine on the reliability or clarity of witness testimony. Further, he does not identify what standards he used to judge the clarity of the witness testimony.

8. Bailey's made no changes to the Petzl product. He does not lay the required foundation to offer such an opinion; there is no evidence that Dr. Ellis reviewed the product before it was sent to the consumer, nor that he is familiar with the processes used by Petzl.

9. The allegation of obscuration of scratch marks on the bolt by the rope is absurd. He indicated this is based on his visual inspection of the product, but offers no further support for this.

10. Proper fall protection devices are easily available through safety dealers nationwide. He does not identify what industry standards, codes, laws, or regulations he relied upon to come to this conclusion.

6

11. There was a failure of the chain of custody of the broken bolt and nut. In his *curriculum vitae,* there are no degrees, certifications, or relevant experience that would permit him to opine on the sufficiency of chain of custody. Further, he does not identify what standards he used to judge the sufficiency of the chain of custody. Note, he specifically indicates that this is not a scientific finding.

12. Bailey's sold the Micrograb in an unaltered state. This is the same opinion as number 8 above, and is problematic for the same reasons.

13. The flipline plaintiff used is consistent with the instructions in the product. He does not identify what industry standards, codes, laws, or regulations he relied upon to come to this conclusion.

Dr. Ellis never ties any reliable scientific information to his opinions. The opinions noted above contain no scientific or technical reasoning behind them. He does not describe any methods he used to come to these conclusions, any standards he referred to, the rate of error of any of those methods or standards, or any other explanation whatsoever. They are bare conclusions, not explained with methods and procedures of science and is instead merely the experts "word" on the matter. This court is not required to take the experts word for it, and

7

as such the opinions are inadmissible under the Daubert standard.

However, Dr. Ellis does not methods and procedures of science he relied on to come to this conclusion, what tests he used, what standards, or what studies. They are merely unsupported speculation with no good grounds for such an opinion. Simply put, Dr. Ellis has offered no scientific support for his opinions. As such they are mere statement of fact, inapplicable to an expert report and should be excluded.

III. CONCLUSION

For the above reasons, plaintiffs ask that the Court grant its Motion to exclude defendant Bailey's Expert and Expert Report in its entirety.

>Respectfully submitted,
>*/s/Matthew Weng*
>MATTHEW WENG ESQ.
>ATTORNEY FOR PLAINTIFFS