THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| **Nicholas Kuhar et al.,** | |
| **Plaintiffs,** | |
| v. | Civil No. 16-0395 (JBS/JS) |
| **Petzl Co. et al.,** | |
| **Defendants.** | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the "Motion in Limine to Exclude Defendant Bailey's Liability Expert Testimony and Report" [Doc. No. 188] ("motion") filed by plaintiffs. The Court received the opposition of defendant Bailey's Corporation ("Bailey's") [Doc. No. 200] and recently held oral argument. For the reasons to be set forth herein, plaintiffs' motion is GRANTED.[1]

Background

Since the parties are obviously familiar with the case and its fact and procedural background, the Court incorporates by reference the discussion in its Memorandum Opinion and Order granting the motions to strike plaintiffs' liability expert report filed by Bailey's and Uintah Fastener & Supply, LLC ("Uintah").

---

[1] All parties declined the opportunity to present live testimony in connection with these motions and asked the Court to decide the motion on the papers.

1

See Mem. Op. & Order, Nov. 27, 2018 [Doc. No. 257]. By way of brief background, the present action is a products liability case arising from plaintiff Nicholas Kuhar's use of defendants' safety harness while working on the roof of a barn.[2] Plaintiff was allegedly using the harness when a bolt broke in two, causing him to fall thirty-seven (37) feet and sustain serious injuries. Plaintiffs' claim is primarily focused on design and manufacturing defects associated with the bolt. However, as to Bailey's, plaintiffs claim Bailey's chose an improper rope. Bailey's did not design or manufacture the harness or the bolt. Rather, Bailey's purchased the harness and packaged it with a rope before retailing it to plaintiff in January 2006. See Def.'s Opp. at 1-2; Petzl Mot. Summ. J., Br. at 1 [Doc. No. 193-2].

On or about March 27, 2018, Bailey's produced a four-page report from its liability expert, Dr. J. Nigel Ellis ("Ellis"). See Mot. at 1; Ellis Report [Doc. No. 188-1]. Ellis is a professional engineer and board-certified safety professional with a Ph.D. in photochemical processes. Mot. at 1. It has not been alleged that Ellis has any metallurgical expertise. In his report, Ellis opined as to "whether and to what extent the defendants, or others, acted in a negligent manner" and how "their conduct, if

---

[2] Any reference by the Court to the singular "plaintiff" shall refer only to Nicholas Kuhar.

any, [contributed] to Mr. Kuhar's fall." Ellis Report at 1; see Mot. at 1. Specifically, Ellis expressed the following opinions:

(1) Bailey's sold the Micrograb under the Petzl tradename and were [sic] generally marketing arborists supplies which was for Mr. Kuhar's primary tree business.
(2) Bailey's sale of the flipline used was not the cause of a fractured bolt in the Petzl rope grab product.
(3) Bailey's shipments included product instructions for Petzl and the Flipline with wire core and proper use was the responsibility of the user, Mr. Kuhar.
(4) The plaintiff has the responsibility to follow all instructions and labels.

. . . .

(7) There was a lack of clarity of the witnesses to describe Mr. Kuhar's fall.
(8) Bailey's made no changes to the Petzl product.
(9) The allegation of obscuration of the scratch marks on the B53 bolt by the rope is absurd based on my observation of the assembly at the plaintiff's attorney's offices.
(10) Proper fall protection devices are easily available through safety dealers nationwide with technical help on recommended applications.
(11) There was a failure of the chain of custody of the Petzl broken bolt/nut and any suggestion of a role played by Bailey in manufacturing or alteration or instructions for use with ropes regarding fliplines based solely on one section of Mr. Kurth's testimony is inappropriate and conflicts with other Petzl deponents. This is not a scientific finding.
(12) The M[i]crograb was sold by Bailey's in an unaltered state from the manufacturer and Bailey[']s played no part in the design or manufacturer [sic] of the product.
(13) The flipline used by the plaintiff is consistent with the instruction distributed with the product. The flipline was used in a damaged condition but the failure of the bolt was not related to the use of this flipline.

Ellis Report at 3-4.[3]

Plaintiffs now move to strike Ellis' report contending it fails to satisfy the requirements of Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993). Plaintiffs generally allege Ellis' report and the opinions contained therein must be excluded because they do not result from reliable principles and methodologies. See Mot. at 4. More specifically, plaintiffs allege that "Dr. Ellis does not make reference to any tests or industry methods conducted on the bolt or any other evidence" and "never ties any reliable scientific information to his opinions." Id. at 4, 7. Plaintiffs assert Ellis' opinions amount to "bare conclusions" that merely rely on his "word." Id. at 7. In contrast, Bailey's argues Ellis' testimony is admissible in response to the nature and form of the allegations contained in plaintiffs' expert report. See Def.'s Opp. at 4. Bailey's "assumes" the scope of admissible expert testimony under Daubert must "encompass the right to rebut statements made by" an expert witness proffered by an adversary. Id. at 4. To this end, Bailey's contends Ellis' rebuttal to plaintiffs' expert's opinion that it "supplied the wrong rope" results from reliable methods.

---

[3] Bailey's stipulated to withdraw Ellis' testimony relating to opinions five (5) and six (6). See Mot. to Withdraw [Doc. No. 242]; Order, Sept. 25, 2018 [Doc. No. 244].

4

Id. As discussed herein, the Court will grant plaintiffs' motion and strike Ellis' report in full.

Discussion

Under the Federal Rules of Evidence a district court acts as a "gatekeeper" to "ensure that any and all expert testimony or evidence is not only relevant, but also reliable." Daubert, 509 U.S. at 589; Oddi v. Ford Motor Co., 234 F.3d 136, 144 (3d Cir. 2000). This basic obligation "applies to all expert testimony." Kumho Tire Co., Ltd. v. Carmichael, 562 U.S. 137, 147 (1999). Thus, whenever a party seeks to admit expert testimony the judge must make an initial determination concerning its substance to assure "a standard of evidentiary reliability." Id. (quoting Daubert, 509 U.S. at 589-90).

Federal Rule of Evidence 702 governs the admissibility of expert testimony, permitting a witness "qualified as an expert by knowledge, skill, experience, training, or education" to testify in the form of an opinion, provided that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; see generally Daubert, supra. The burden is on the party proffering expert testimony to prove its admissibility

by a preponderance of the evidence. Daubert 509 U.S. at 592 n.10 (citing Bourjaily v. United States, 483 U.S. 171, 175-76 (1987)).

As stated in Rule 702, in order to be admissible expert testimony must be helpful to the trier of fact. The Court has discretion to determine whether expert testimony is helpful. Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 217 (3d Cir. 2006). An expert's opinion is not helpful if it opines as to the governing law of the case. Id.  In addition, expert testimony covering an area known and within the knowledge of a layperson is not helpful. Bryan v. Shah, 351 F. Supp. 2d 295, 302 n.14 (D.N.J. 2005). Further, expert testimony is not helpful "when the untrained layman would be qualified to determine . . . the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." Senese v. Liberty Mutual Ins. Co., 661 Fed. App'x 771, 775 (3d Cir. 2016) (citation omitted).

Rule 702 has been described by the Third Circuit as embodying a "trilogy of restrictions on expert testimony: [1] qualification, [2] reliability, and [3] fit." Calhoun v. Yamaha Motor Corp., U.S.A., 350 F.3d 316, 321 (3d Cir. 2003) (quoting Schneider v. Fried, 320 F.3d 396, 405 (3d Cir. 2003)). First, the witness must be qualified to testify as an expert, which requires "the witness possess specialized expertise." Id. Second, the testimony must be reliable, which demands that the expert's inferences or assertions

6

"be derived by the scientific method" and not by "subjective belief or unsupported speculation." Daubert, 509 U.S. at 590; Fedorczyk v. Caribbean Cruise Lines, Ltd., 82 F.3d 69, 75 (3d Cir. 1996). Third, the testimony must "fit" the case, in that it "must be relevant for the purposes of the case and must assist the trier of fact." Schneider, 320 F.3d at 404.

Ellis' expert report will be stricken because it is replete with subjective beliefs and bare speculation that is of no assistance to the factfinder. Ellis also offers a number of inadmissible legal opinions that seek to instruct the jury on the result to reach. In addition, Ellis addresses fact issues that are the province of the jury. These deficiencies run afoul of the reliability and fit requirements of Rule 702 and Daubert, and demand that defendants' motion be granted. The Court will address each of Ellis' opinions in sequence.

1. Opinion No. 1

Ellis' first opinion states as follows:

> Bailey's sold the Micrograb under the Petzl tradename and were [sic] generally marketing arborists supplies which was for Mr. Kuhar's primary tree business.

Ellis Report at 3.

The Court finds Ellis' first opinion does not "fit" the case because it merely addresses a fact question that does not require expert testimony. Therefore, the opinion is not helpful and is stricken. Further, the proposed testimony does not "aid the jury

in resolving a factual dispute" for the reason that the facts Ellis addresses are apparently not in dispute. Daubert, 509 U.S. at 591 (citation omitted). For these reasons, the Court strikes Ellis' first opinion.

2. Opinion No. 2

Ellis' second opinion states as follows:

> Bailey's sale of the flipline used was not the cause of a fractured bolt in the Petzl rope grab product.

Ellis Report at 3.

Ellis' second opinion is based upon his subjective belief and speculation concerning the factual issue of causation, and as such, offers no aid to the factfinder. Ellis did no analysis to support opinion two and merely relies on his bare conclusion. Further, there is no indication Ellis' theory of causation was derived by the application of reliable scientific principles or methodologies. Ellis fails to spell out his reasoning or cite to any evidence to support his opinion. Consequently, his opinion fails to satisfy the reliability and fit requirements of Rule 702 and Daubert; see also Holman Enters., 563 F Supp. 2d at 472-73 (striking expert report because it was replete with speculations and "blanket conclusions" that did "nothing to assist the factfinder").

Because expert testimony aids the jury in making factual determinations, such as causation, the testimony must be

predicated upon evidence and not mere speculation and conclusory statements. Oddi, 234 F.3d at 146; Worrell v. Elliot & Frantz, 799 F. Supp. 2d 343, 349 (D.N.J. 2011) (citation omitted). "An expert opinion is not admissible if the court concludes that an opinion based upon particular facts cannot be grounded upon those facts." Fedorczyk, 82 F.3d at 75. In the absence of evidentiary support, an expert's testimony is of no assistance to the factfinder and insufficient to establish causation. See Worrell, 799 F. Supp. 2d at 349; Oddi, 234 F.3d at 146 (quoting Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997)) ("A court may conclude that there is simply too great a gap between the data and the opinion proffered."). This is the case with regard to opinion two because there is no analysis to support Ellis' conclusion as to why the bolt broke.

Ellis' report, including opinion two, is focused primarily on the standard of care allegedly established by regulations and industry practices in the field of fall protection. See generally Ellis Report. Notably, Ellis does not speak to the issue of what caused the bolt to break prior to opining Bailey's had nothing to do with the break. Nor does Ellis present any empirical evidence or reasoning to support his opinion. This "gap between the data and the opinion proffered" by Ellis is fatal to opinion two. Oddi, 234 F.3d at 146 (citation omitted); see Holman Enters., 563 F. Supp. 2d at 473 ("Without providing any sort of gauge for the basis of

his decision either from his own extensive experience in the industry or some industry standards or guidelines, [the expert's] statements do nothing to assist the factfinder.").

Since Ellis provides no analysis to support opinion two, the Court finds opinion two does not "reliably flow from the facts known" to him. Oddi, 234 F.3d at 146 (quoting Heller v. Shaw Indus., Inc., 167 F.3d 146, 153 (3d Cir. 1999)). Ellis' second opinion amounts to a "blanket conclusion[]" and nothing more. See Holman Enters., 563 F. Supp. 2d at 473 ("It is merely a restatement of certain evidence without any insight into the expert's own analysis or bases for his opinion."). As such, opinion two does not satisfy the reliability or fit requirements of Rule 702.[4] For the foregoing reasons, the Court strikes Ellis' second opinion.

3. Opinion No. 3

Ellis' third opinion states as follows:

> Bailey's shipments included product instructions for Petzl and the Flipline with wire core and proper use was the responsibility of the user, Mr. Kuhar.

Ellis Report at 3.

Ellis' third opinion is stricken because it is predicated upon his subjective beliefs and speculation, not evidence. Accordingly, the opinion is of no assistance to the jury. More

---

[4] Opinion two is also stricken because Ellis is not qualified to give an opinion as to why the bolt broke. Ellis has no expertise regarding bolt fracture analysis or metallurgical issues.

10

importantly, however, Ellis' second opinion "is an obvious conclusion of law inappropriate for an expert report." Holman Enters., 563 F. Supp. 2d at 472.

District courts "must limit expert testimony so as to not allow experts to opine on 'what the law require[s].'" Id. (quoting United States v. Leo, 941 F.2d 181, 196-97 (3d Cir. 1991)). "This prohibition on experts testifying as to [] [] legal conclusions is 'so well established that it is often deemed a basic premise or assumption of evidence law – a kind of axiomatic principle.'" Id. (quoting Casper v. SMG, 389 F. Supp. 2d 618, 621 (D.N.J. 2005)). Hence, an expert witness cannot "merely tell the jury what result to reach." Krys v. Aaron, 112 F. Supp. 3d 181, 192 (D.N.J. 2015) (citing Fed. R. Evid. 704(a) Advisory Committee's Notes (1972)); see also Holman Enters., 563 F. Supp. 2d at 472.

In Holman Enterprises, the defendants proffered an expert report that "conclude[d] nothing in the record would support" the plaintiffs' claim. Id. at 470. Subsequently, the plaintiffs moved to strike the report, alleging the report was based on speculation, insufficient facts, and improper legal conclusions. Id. at 471. The court agreed, finding the report was "replete with legal conclusions and speculation that ultimately render[ed] [the] entire report deficient" and inadmissible. Id. 472. The court noted that although the expert opined to a host of issues, he "provided no analysis to support [his] blanket conclusions." Id. at 473.

11

"Without providing any sort of gauge for the basis of his decision, either from his own extensive experience in the industry or some industry standards or guidelines, [the expert witness'] statements do nothing to assist the factfinder." Id.; see generally Daubert, 509 U.S. at 591-92. Regardless of the expert's qualifications, or the testimony's reliability or fitness, an expert is "prohibited from rendering a legal opinion." Berckeley, 455 F.3d at 217.

In Berckeley the Third Circuit addressed how "the line between admissible and inadmissible expert testimony" can be blurred in the context of "customs and practices that implicate legal duties." Id. at 218. The decision reaffirmed that an expert's opinion on the issue of whether a party complied with and/or violated "legal duties" is inadmissible, "because it would usurp the District Court's pivotal role in explaining the law to the jury." Id. at 217-18 (precluding an "experienced former counsel" for the SEC from offering opinions as to whether a party complied with legal duties set by securities laws and regulations).

Ellis opines that Bailey's included instructions with the harness it sold to plaintiff back in 2006. For one, this opinion is not a proper subject of expert testimony since it addresses a fact issue to be decided by the jury. In addition, Ellis cites no evidence to support his opinion. Nor does he indicate how he determined what Bailey's did or did not do over a decade ago. Without the necessary analysis or evidentiary support, Ellis'

12

proposed testimony is inherently unfit for the case and of no aid to the jury. See Worrell, 799 F. Supp. 2d at 349. Further, it fails to "assist the factfinder toward resolution of the issues." Holman Enters., 563 F. Supp. 2d at 472.

Ellis also opines that proper use of the harness is the "responsibility of the user." Ellis Report at 3. Ellis' assignment of responsibility "implies some level of legal analysis on his part" because it seeks to impose a legal duty of care on plaintiff's part. Holman Enters., 563 F. Supp. 2d at 472. Consequently, Ellis' third opinion is unfit for the case pursuant to Rule 702. For these reasons, the Court strikes opinion three.

4. Opinion No. 4

Ellis' fourth opinion states as follows:

> The plaintiff has the responsibility to follow all instructions and labels.

Ellis Report at 3.

The Court finds Ellis' fourth opinion must be stricken for failing to meet the fit requirement set forth in Rule 702 since the opinion is not predicated upon evidence nor helpful to the jury. Further, opinion four implicates a conclusion of law that seeks to impose a duty of care on plaintiff. See Holman Enters., 563 F. Supp. 2d at 472. Thus, for the reasons discussed above, the Court strikes opinion four.

5. Opinion No. 7

Ellis' seventh opinion states as follows:

> There was a lack of clarity of the witnesses to describe Mr. Kuhar's fall.

Ellis Report at 4.

Ellis' seventh opinion is a product of his own subjective beliefs and speculation without any supporting analysis or evidence. As such, the opinion fails to satisfy Rule 702's fit requirement. Further, the subject of opinion seven is a fact question for the jury, not a proper subject of expert testimony. The jury will decide, not Ellis, as to whether the descriptions of plaintiff's fall are credible. Thus, for the reasons previously discussed, the Court strikes opinion seven.

6. Opinion No. 8

Ellis' eighth opinion states as follows:

> Bailey's made no changes to the Petzl product.

Ellis Report at 4.

Ellis' eighth opinion must be stricken because it is not a proper subject of expert testimony. Opinion eight addresses a fact issue that will be addressed by the jury. The jury will decide, not Ellis, the fact question of whether or not Bailey's changed Petzl's product. As a result, Ellis' eighth opinion fails to satisfy the fit requirement of Rule 702. For the reasons previously discussed, the Court strikes Ellis' eighth opinion.

7. Opinion No. 9

Ellis' ninth opinion states as follows:

> The allegation of obscuration of the scratch marks on the B53 bolt by the rope is absurd based on my observation of the assembly at the plaintiff's attorney's offices.

Ellis Report at 4.

Ellis' ninth opinion addresses the following statement in plaintiffs' expert report: "The rope provided by Bailey's in the kit when assembled into the micrograb virtually obscured anyone's ability to see the bolt within the micrograb." See Lynch Report at 2, 7 [Doc. No. 185-5]. The Court finds that Ellis' ninth opinion is predicated upon his subjective beliefs and speculation and, as such, it does meet the fit requirements of Rule 702 and Daubert. Whether or not Bailey's rope obscured the bolt within the micrograb is a question of fact the jury will decide. Ellis' opinion in this regard is not helpful to the jury. Thus, for the reasons previously discussed, the Court strikes Ellis' ninth opinion.

8. Opinion No. 10

Ellis' tenth opinion states as follows:

> Proper fall protection devices are easily available through safety dealers nationwide with technical help on recommended applications.

Ellis Report at 4.

Ellis' tenth opinion will be stricken because it does "nothing to assist the factfinder." Holman Enters., 563 F. Supp. 2d at 473;

15

see Daubert, 509 U.S. at 591. The subject of opinion ten is a fact question that will be addressed by the jury. The jury will decide, not Ellis, the fact issue of whether fall protection devices are generally available. Thus, opinion ten fails to satisfy Rule 702's fit requirement and is not helpful. For the reasons previously discussed, the Court strikes Ellis' tenth opinion.

9. Opinion No. 11

Ellis' eleventh opinion states as follows:

> There was a failure of the chain of custody of the Petzl broken bolt/nut and any suggestion of a role played by Bailey in manufacturing or alteration or instructions for use with ropes regarding fliplines based solely on one section of Mr. Kurth's testimony is inappropriate and conflicts with other Petzl deponents. This is not a scientific finding.

Ellis Report at 4.

The Court finds Ellis' eleventh opinion is the result of his unsupported subjective beliefs and speculation, and as such, the opinion is not fit for the case and is not helpful to the jury. Chain of custody issues are plainly fact questions for the jury. So too is an opinion addressing the credibility of the testimony of a witness. Thus, for the reasons previously discussed, the Court strikes Ellis' eleventh opinion.

10. Opinion No. 12

Ellis' twelfth opinion states as follows:

> The M[i]crograb was sold by Bailey's in an unaltered state from the manufacturer and Bailey[']s played no part in the design or manufacturer [sic] of the product.

16

Ellis Report at 4.

Ellis' twelfth opinion will be stricken because it is not predicated upon evidence and is of no assistance to the factfinder. Further, opinion twelve addresses a fact issue that will be addressed by the jury. As a result, opinion twelve fails to satisfy the fit requirement of Rule 702. For the reasons previously discussed, the Court strikes Ellis' twelfth opinion.

11. Opinion No. 13

Ellis' thirteenth opinion states as follows:

> The flipline used by the plaintiff is consistent with the instruction distributed with the product. The flipline was used in a damaged condition but the failure of the bolt was not related to the use of this flipline.

Ellis Report at 4.

Ellis' final opinion is not predicated on any analysis or foundation and offers no assistance to the jury. As a result, the opinion fails to satisfy Rule 702's fit requirement. Ellis never discusses the instructions the product came with, nor does he indicate how he assessed the consistency of the instructions with the product. Further, Ellis provides no basis for opining that the flipline was used by plaintiff in a damaged condition. Thus, the Court finds Ellis' final opinion is based on his own subjective beliefs and speculation. For the reasons already discussed, the Court strikes the thirteenth opinion in Ellis' expert report.

The Court agrees with Bailey's that the proper procedures to

use for fall protection is an appropriate subject of expert testimony. Def.'s Opp. at 1-3. However, Ellis does not focus on this subject in his report. Instead, Ellis mostly addresses fact issues that are the province of the jury. Further, Ellis engages in speculation and conclusory statements as to the opinions he expresses. In addition, Ellis has no metallurgical expertise to opine as to how and why the bolt broke. For these reasons the Court strikes Ellis' opinions.

Conclusion

For all the reasons discussed above, the Court finds Ellis' report does not meet the Daubert admissibility standard and must be stricken.[5]

---

[5] Bailey's did not submit a supplemental expert report or an affidavit in opposition to plaintiffs' motion. Nor did Bailey's take advantage of the opportunity to present Ellis' live testimony when the Court heard oral argument on plaintiffs' motion. In addition, Bailey's has not suggested that it has any new information to add to its arguments. As was the case that existed with regard to the Daubert motions directed to plaintiffs' expert report, it is therefore ripe to decide plaintiffs' Daubert motion without a further hearing. Bailey's is not entitled to an "open-ended and never-ending opportunity to meet a Daubert challenge until [defendant] 'gets it right.'" Oddi, 234 F.3d at 154 (citation omitted); Feit v. Great-West Life & Annuity Ins. Co., 460 F. Supp. 2d 632, 638-37 (D.N.J. 2006) (separate Daubert hearing not necessary where the court has ample information from which to conclude that the expert lacks "good grounds" for his conclusions).

ORDER

Accordingly, for the foregoing reasons,

IT IS HEREBY ORDERED this 4th day of December 2018, that plaintiffs "Motion in Limine to Exclude Defendant Bailey's Liability Expert Testimony and Report" [Doc. No. 188] is GRANTED. Dr. Ellis' March 27, 2018, liability expert report is hereby STRICKEN in its entirety.

/s/ Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge

Date: December 4, 2018