[Doc. No. 280]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

Nicholas Kuhar et al.,

        Plaintiffs,

v.

Petzl Co. et al.,

        Defendants.

Civil No. 16-395 (RMB/JS)

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the "Motion to Strike Defendant Porteous/Brighton Best's Experts" [Doc. No. 280] ("motion") filed by plaintiffs. The Court received the opposition of defendants Brighton Best, Inc. ("Brighton Best") [Doc. No. 292] and Uintah Fastener & Supply, LLC ("Uintah") [Doc. No. 293], plaintiffs' reply [Doc. No. 295], and the Court recently held a Daubert hearing.[1] For the reasons to be discussed, plaintiffs' motion is GRANTED in part and DENIED in part.

**Background**

Since the parties are familiar with the case, the Court incorporates by reference its summary of the fact background and procedural history of the case set forth in Kuhar v. Petzl Co.,

---

[1] At the hearing, Brighton Best produced live testimony from its two experts plaintiffs' motion seeks to strike: John P. Gashinski, P.E. and Kenneth M. Gardside, P.E. See Doc. No. 299.

1

C.A. No. 16-0395 (JBS/JS), 2018 WL 7571319, at *1 (D.N.J. Nov. 27, 2018).[2] By way of brief background, the present action is a products liability case arising from plaintiff Nicholas Kuhar's use of a safety harness called a "micrograb" while working on the roof of a barn. Mr. Kuhar was allegedly using the micrograb harness when a component steel bolt broke in two, causing him to fall thirty-seven (37) feet and sustain serious injuries. Plaintiffs' claim is primarily focused on design and manufacturing defects associated with the broken bolt. Brighton Best is alleged to have manufactured the broken bolt. See id. at *1.

On or about March 30, 2018, Brighton Best produced an expert report from its metallurgist expert, John P. Gashinski, P.E., and its mechanical engineering expert, Kenneth M. Garside, P.E, of Affiliated Engineering Laboratories, Inc. ("Affiliated Report"). See Pls.' Br. at 2 [Doc. No. 280-1]; see also Affiliated Report [Doc. No. 280-2]. Gashinski is a professional engineer holding a Bachelor's and Master's in Materials Science and Engineering. See Doc. No. 280-4 at 8. Garside is a professional engineer holding a Bachelor's Degree in Mechanical Engineering and a Master's Degree in Engineering Science. See id. at 2. In the Affiliated Report,

---

[2] In this Memorandum Opinion and Order the Court addressed whether to exclude plaintiffs' liability expert, Dr. Richard F. Lynch, under Daubert. The Court Ordered the expert be stricken. Plaintiffs' appeal [Doc. No. 265] of the Order was recently denied by the Honorable Renée Marie Bumb. See Doc. No. 322.

2

defendant's experts opined the following to a reasonable degree of engineering certainty:

(1) The subject shoulder bolt failed within the thread neck region by ductile overload fracture that transitioned to shear overload condition. This area of the assembled fastener is not significantly loaded during intended use such that the subject overload event could not have occurred in the manner alleged.

(2) There was no evidence of any design and/or manufacturing defect that would have been causally related to the subject shoulder bolt failing in the reduced cross-section region of the thread neck. In consideration of the design application of the subject shoulder bolt to the involved Micrograb, this region of the bolt would not be subjected to any loading condition(s) to induce such a failure during intended use.

(3) The observed failure mode of the bolt is not consistent with the testimony and plaintiff's [sic] allegations as described. Accordingly, any opinion indicating the subject failure was due to any impropriety or shortcoming on the part of a distributor of the bolt fastener is devoid of technical basis and should be viewed as speculation at best.

Affiliated Report at 35.[3]

Plaintiffs move to strike the Affiliated Report in its entirety alleging that it fails to satisfy the requirements of Fed. R. Civ. P. 702 and Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993). Plaintiffs generally allege the report and the opinions contained therein must be excluded because they lack a

---

[3] Plaintiffs do not object to the experts' qualifications within their fields of expertise.

reliable foundation and are not fit for the case. See Pls.' Br. at 4-6. Specifically, plaintiffs object to the report's use of undefined terms, alleging that it improperly opines as to the "intended" or "normal use" of the micrograb. Id. at 4. Plaintiffs further allege that, had the report attempted to define these terms, defendant's experts are unqualified to offer them. Id. In addition, plaintiffs contend the report omits, in large part, any scientific method or basis used by the experts to render the opinions they reach. Id. at 5-7.

Brighton Best opposes plaintiffs' motion, contending that the Affiliated Report "clearly conforms to the standards set forth in Daubert." Opp. at 3. [Doc. No. 292]. Brighton Best alleges that plaintiffs' "arguments fail to consider the entirety of the report," and instead, "cite[s] in piecemeal fashion" to just three pages of the thirty-five-page report. Id. Brighton Best also alleges plaintiffs offer no legal support for their proposition that the report must define "such common terms," and further argue plaintiffs misconstrue the "plain meaning" of the terms. Id. at 3-6. Brighton Best opposes plaintiffs' allegation that its experts fail to provide any reliable scientific support for the conclusions they reach. Id. 6-7. Brighton Best also asserts "[a]n examination of the entire report reveals that [it] painstakingly analyzes the cause of the fracture through the use of physical inspection and testing, metallurgical analysis and evaluation," and reviews of

4

files, photographs, charts, and drawings. Id. at 8. As such, Brighton Best contends the report is reliable and fit for the issues in dispute. Id. at 10-11. In its opposition, Brighton Best requested that the Court conduct an in limine hearing if it intended to entertain oral argument on plaintiffs' motion.[4]

**Discussion**

The Court incorporates by reference its discussion of the Daubert standard and Rule 702 set forth in Kuhar, 2018 WL 7571319, at *2-3.

At the outset, the Court will address plaintiffs' objection stated on the record at the close of the Court's Daubert hearing. Plaintiffs objected on the ground that the definitions of certain technical terms were not contained in defendants' expert report. For example, plaintiffs take issue with Gashinski and Garside's failure to define the terms "normal (or intended use)," "ductile overload," and "microvoid coalescence." However, an expert is not required to define every technical term contained in his or her report. See Crowley v. Chait, 322 F. Supp. 2d 530, 540 (D.N.J. 2004) ("[O]ne of the very purposes of a Daubert hearing . . . is to give experts a chance to explain and even correct errors that they made in their reports."). At the Daubert hearing, Gashinski

---

[4] Defendant Uintah also wrote in opposition to plaintiffs' motion, largely reiterating the arguments set forth by Brighton Best, and requesting the Court conduct an in limine hearing if it intended to hold oral argument on the motion. See Uintah Opp. at 15.

5

testified the terms objected to are "germane terms" and generally accepted as defined within his field of expertise. See Tr., Aug. 19, 2019 at 54:18-22. As for "intended" or "normal use," both experts testified that this does not refer to the intended use of arborist equipment as plaintiffs contend. See Pls.' Br. at 4. Rather, these references are specific to the shoulder bolt and the typical forces known to mechanically engage the bolt by experts in their fields. See Tr., Aug. 19, 2019 at 78:17-79:10. Thus, Gashinski and Garside are qualified to render the opinions in their respect, and as such, the opinions fit the issues in dispute. See Daubert, 509 U.S. at 591; see also Oddi, 234 F.3d at 145 (noting "that an expert's 'qualifications' are interpreted liberally"). Accordingly, the Court finds plaintiffs' first objection is without merit.

The Court will now address each of the Affiliated Report's three ultimate opinions in sequence.

1. <u>Opinion No. 1</u>

Affiliated Report's first opinion states as follows:

> The subject shoulder bolt failed within the thread neck region by ductile overload fracture that transitioned to shear overload condition. This area of the assembled fastener is not significantly loaded during intended use such that the subject overload event could not have occurred in the manner alleged.

Affiliated Report at 35.

The Court finds the first opinion in the Affiliated Report satisfies Rule 702 and Daubert, supra, up and until the experts opine as to "such that the subject overload event could not have occurred in the manner alleged." The Court finds the initial portion of the opinion is based upon reliable scientific principles and methodologies, and reasonably flows from the facts known to defendant's experts and the methods they employed. In their report and at the Daubert hearing, Gashinski and Garside detailed the extensive laboratory testing, visual inspections, and scientific analyses they performed in rendering their conclusion. As discussed above, the experts' reference to "intended use" refers to the typical forces known to mechanically engage the bolt by experts in their fields, a subject both experts are qualified to opine on. See Tr., Aug. 19, 2019 at 78:17-79:10. Nonetheless, the Court finds the last fourteen (14) words of the opinion, stating "such that the subject overload event could not have occurred in the manner alleged," involve a fact question the jury must decide. Therefore, the Court will strike this portion from opinion one.

2. Opinion No. 2

Affiliated Report's second opinion states as follows:

> There was no evidence of any design and/or manufacturing defect that would have been causally related to the subject shoulder bolt failing in the reduced cross-section region of the thread neck. In consideration of the design application of the subject shoulder bolt to the involved Micrograb, this region of the bolt would

7

> not be subjected to any loading condition(s) to induce
> such a failure during intended use.

Affiliated Report at 35.

The Court finds the second opinion in the Affiliated Report satisfies Rule 702 and the Daubert standard for the reasons stated above, in that: the experts are qualified to render the opinion in their capacities as engineers; the opinion is based upon reliable scientific principles and methods, including extensive laboratory testing, visual inspections, chemical and failure analyses, and mathematical formulas utilizing the bolt's specification standard, see Tr., Aug. 19, 2019 at 61:16-65:2; the opinion reasonably flows from the facts known to the experts and the methodologies used; and the conclusions drawn therein clearly fit the issues in dispute in the case. Therefore, the Court finds the Affiliated Report's second opinion satisfies Daubert's admissibility standard.

3. Opinion No. 3

Affiliated Report's third opinion states as follows:

> The observed failure mode of the bolt is not consistent
> with the testimony and plaintiff's [sic] allegations as
> described. Accordingly, any opinion indicating the
> subject failure was due to any impropriety or
> shortcoming on the part of a distributor of the bolt
> fastener is devoid of technical basis and should be
> viewed as speculation at best.

Affiliated Report at 35.

The third opinion contained in the Affiliated Report is a product of Gashinski and/or Garside's own subjective beliefs and

speculation without any supporting analysis or evidence. As such, the opinion fails to satisfy Rule 702's fit requirement. See Holman Enters. V. Fidelity and Guar, Ins., 563 F Supp. 2d 467, 472-73 (D.N.J. 2008) (striking the report because it was replete with speculations and "blanket conclusions" that did "nothing to assist the factfinder"). Further, the subject of opinion three is a fact question for the jury and not a proper subject of expert testimony. See Krys v. Aaron, 112 F. Supp. 3d 181, 203 (D.N.J. 2015) ("[E]xperts may not provide testimony concerning 'the state of mind' or 'culpability' of [a party]."). The jury will decide, not Gashinski or Garside, as to whether testimony or descriptions regarding plaintiffs' fall incident are credible. Therefore, for the reasons previously discussed, the Court strikes opinion three.

**Conclusion**

For all the reasons discussed above, the Court finds opinion one, in part, and opinion two contained in the Affiliated Report satisfy Daubert's admissibility standard. However, the Court finds that the last fourteen (14) words of opinion one, and opinion three in full, do not meet the standard and must be stricken.

**O R D E R**

Accordingly, for the foregoing reasons,

IT IS HEREBY ORDERED this 12th day of September 2019, that plaintiffs' "Motion to Strike Defendant Porteous/Brighton Best's Experts" [Doc. No. 280] is GRANTED in part and DENIED in part; and it is further

ORDERED that plaintiffs' motion is GRANTED as to opinion three contained in the Affiliated Report, which is hereby STRICKEN; and it is further

ORDERED that plaintiffs' motion is GRANTED as to the last fourteen (14) words of opinion one contained in the Affiliated Report, which are hereby STRICKEN; and it is further

ORDERED that plaintiffs' motion is DENIED as to the remaining portion of opinion one contained in the Affiliated Report; and it is further

ORDERED that plaintiffs' motion is DENIED as to opinion two contained in the Affiliated Report.

                                      s/ Joel Schneider
                                      JOEL SCHNEIDER
                                      United States Magistrate Judge