[Doc. No. 183]

# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

| | |
|---|---|
| **NICHOLAS KUHAR et al.,** | |
| Plaintiffs, | |
| v. | Civil No. 16-0395 (RMB/JS) |
| **PETZL Co. et al.,** | |
| Defendants. | |

### REPORT AND RECOMMENDATION REGARDING THE MOTION FOR SUMMARY JUDGMENT FILED BY QUALITY PLATING

This matter is before the Court on the "Motion for Summary Judgment" ("motion") [Doc. No. 183] filed by defendant Quality Plating ("Quality" or "defendant"). The Court is called upon to address whether Quality is liable for an allegedly defective bolt it zinc plated for defendant Uintah Fastener and Supply, LLC ("Uintah") which plaintiff contends caused his accident. The Court received the opposition filed by plaintiff [Doc. Nos. 212 and 331] and defendant's reply [Doc. No. 220]. The Court recently held oral argument. This Report and Recommendation is issued pursuant to 28 U.S.C. §636(b)(1). For the reasons to be discussed, it is respectfully recommended that Quality be GRANTED summary judgment pursuant to Fed. R. Civ. P. 56. The Court makes the following findings in support of this Recommendation.

Background

Insofar as Quality is concerned, the crux of this action concerns plaintiff's argument that a shoulder bolt in a micrograb purchased by plaintiff was defective and, as a result, caused him to fall thirty-seven (37) feet to the ground and sustain major injuries. Plaintiffs in this action are Nicholas and Julie Kuhar[1], husband and wife, and residents of New Jersey. Plaintiff commenced this action on December 23, 2015 in the Superior Court of New Jersey, asserting various claims against defendants Petzl America, Inc., Petzl Company (collectively, "Petzl"), and Bailey's Corporation ("Bailey's"), including allegations of product defect pursuant to the New Jersey Product Liability Act ("NJPLA"), N.J. STAT. § 2A:58C-1 – C-11. Mot. at 1. The complaint alleges that Petzl sold the defective bolt to Bailey's who then sold it to plaintiff in January 2006. Id. On January 22, 2016, defendants removed the case to federal court. Id.

Plaintiff's claim arises out of an accident which took place on December 24, 2013 in Alloway, New Jersey, while he was working on the roof of a barn. Second Am. Compl. Factual Allegations ¶ 4 [Doc. No. 102]. The product underlying

---

[1] Any reference to the singular "plaintiff" throughout this Report and Recommendation shall refer to Nicholas Kuhar.

plaintiff's complaint is a "flip-line kit" (hereinafter "flip-line" or "kit"). Mot. at 1; see also Oral Arg. Hr'g Tr. 8:12-24. Plaintiff's kit consists of three component parts: a micrograb which contains the allegedly defective bolt, a carabiner, and a rope. See Oral Arg. Hr'g Tr. 8:12-24. On August 29, 2016, plaintiff amended his complaint and alleged he was "utilizing [defendants'] safety harness to clean gutters" when the "bolt attached to the carabiner of the safety harness snapped," causing plaintiff to fall thirty-seven (37) feet off the roof and "strike crushed concrete." Am. Compl. Factual Allegations ¶ 4 [Doc. No. 43]. Plaintiff sustained serious injuries from the fall, which is alleged by him to have been caused by design and manufacturing defects associated with the flip-line and its component parts. Id. Plaintiff's amended complaint added Uintah Fastener and Supply, LLC ("Uintah") as a defendant alleging it supplied the defective bolt to Thompson Manufacturing, Inc. ("TMI") who then used it to make the micrograb pursuant to Petzl's instructions. Id. Summary of the Action ¶ 8.

On May 30, 2017, Uintah filed a third-party complaint against Porteous Fastener & Supply, LLC ("Porteous"), its purchaser Brighton Best, Inc. ("Brighton"), and Quality. Mot. at 1. Uintah alleged the bolt in question was supplied by Porteous who has since been purchased by Brighton and that Quality zinc plated the bolt. See Third Party Compl. ¶¶ 16 and 18 [Doc. No.

83]. Uintah further alleged upon information and belief the process of zinc plating conducted by Quality "could have caused or contributed to [the] alleged failure of the subject bolt if the plating was performed improperly." Id. ¶ 20. Plaintiff then filed a second amended complaint and added Porteous, Brighton, and Quality as defendants. Mot. at 1. The third-party complaint was further amended to include Fang Sheng Screw, Co., Ltd. ("YFS") who is believed to have manufactured the subject bolt.[2] Am. Third Party Compl. ¶ 21 [Doc. No. 158].

Pursuant to the Court's Scheduling Orders, plaintiff and defendants exchanged liability expert reports. Mot. at 1. Defendants Uintah and Bailey's filed motions to strike plaintiff's expert, Dr. Richard Lynch, alleging his report failed to satisfy the requirements of Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharm., Inc. 509 U.S. 579 (1993). See Doc. Nos. 185 and 196. This Court granted the motion and found that Dr. Lynch's report and testimony were unreliable and, therefore, should be stricken. See Kuhar v. Petzl Co., No. 16-0395, 2018 WL 7571319 (D.N.J. Nov. 27, 2017). Plaintiff appealed the decision and the Order was affirmed by the Honorable Renée Marie Bumb. See Doc. No. 322. Discovery proceedings have

---

[2] At oral argument, it was clarified that Uintah tried to serve YFS but never received confirmation of service. Therefore, no claims are being pursued against YFS and it is not a party to this litigation. See Oral Arg. Hr'g Tr. 10:11-19.

concluded, and defendants have filed motions for summary judgment.

At oral argument, the parties disputed whether any evidence exists as to when the allegedly defective bolt broke.[3] In addition, plaintiff conceded, as he must, that he does not have a liability expert in the case. Oral Arg. Hr'g Tr. 12:19-21. Plaintiff also conceded that he used the allegedly defective micrograb four to five times a month for seven to eight years before the accident occurred. Id. at 22:14-17. Further, plaintiff clarified he is not pursuing a breach of warranty claim against any of the defendants and the only party against whom he is pursuing a failure to warn claim is Petzl. Id. Plaintiff admitted he raised his specific failure to warn claim against Petzl for the first time in his most recent reply brief. Id. at 24:1-13. Last, plaintiff conceded he is not pursuing a manufacturing defect claim against any defendant. Id. at 24:17-22.

---

[3] Plaintiff's counsel argued that Nicholas Kuhar's deposition provides the Court with enough facts with which it can reasonably infer the bolt broke before the plaintiff fell and, therefore, caused him to fall. Oral Arg. Hr'g Tr. 16:4-13. Defendants, however, argue no such evidence exists. Id. at 17:10-25 and 18:17-25. The Court reviewed Nicholas Kuhar's deposition transcript in its entirety and it does not appear there is evidence the Court can rely on to conclude the bolt broke before plaintiff's fall. Nevertheless, the Court is not relying on this argument in this Report and Recommendation.

Quality moves for summary judgment alleging that: (1) Quality is neither a manufacturer, seller nor distributor and cannot be strictly liable pursuant to the New Jersey Product Liability Act ("NJPLA"), N.J. STAT. § 2A:58C-2 and C-8; and (2) Quality could only be liable under a negligence theory, but plaintiff cannot make a prima facie case of negligence without a liability expert. Mot. at 4-7. It is undisputed that no expert alleges that Quality's plating had anything to do with the fracture of plaintiff's bolt. Plaintiff's theory of liability against Quality relates to the possibility that during the zinc plating of the bolt in question, hydrogen embrittlement was created which ultimately weakened the bolt and contributed to the plaintiff's accident. See Mot. at 1; see also Oral Arg. Hr'g Tr. at 32:1-6. However, plaintiff's counsel agreed with the Court's statement that, "without an expert, [he] can't pursue that theory." See Oral Arg. Hr'g Tr. at 32:1-6.

Discussion

A. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56, summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any . . . demonstrate the absence of a genuine issue of material fact." Celotex Corp. v.

6

Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). Summary judgment is not appropriate if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986) (citations omitted). The materiality of a fact turns on whether under the governing substantive law a dispute over the fact might have an effect on the outcome of the suit. Id. The Court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Startzell v. City of Phila., 533 F.3d 183, 192 (3d Cir. 2009) (citation omitted).

The moving party bears the initial burden of informing the Court of the basis for its motion and demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 322-23. Once the burden is met, the burden shifts to the non-moving party to "set forth specific facts showing that there [are] . . . genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250. The party opposing summary judgment may not "rest upon mere allegation[s] or denials of his pleading," but must set forth specific facts and present affirmative evidence demonstrating that there is a

genuine issue for trial. Id. at 256-57; FED. R. CIV. P. 56(c)(1)(A). Additionally, "if the non-moving party's evidence 'is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted.'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Engineers, AFL-CIO, 982 F.2d 884, 890-91 (3d Cir. 1992) (quoting Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992)).

B. Product Liability Claim

Even if strict liability applies to Quality, the Court recommends that its motion for summary judgment be granted. Plaintiff contends that, pursuant to the NJPLA, Quality is liable for the injuries he sustained as a result of the allegedly defective bolt. The NJPLA states that:

> A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: (a) deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae; (b) failed to contain adequate warnings or instructions; or (c) was designed in a defective manner.

N.J. STAT. § 2A:58C-2. Three causes of action exist under the NJPLA, claims for design defect, manufacturing defect, or warnings defect. See Roberts v. Rich Foods, 139 N.J. 365, 375 (1994). The

8

standard of liability is that the product "was not reasonably fit, suitable or safe for its intended purpose." Cornett v. Johnson & Johnson, 414 N.J. Super. 365, 396 (N.J. Super. Ct. App. Div. 2010). To prove a defect, a plaintiff must establish that he or she was a foreseeable or intended user of the product, that the product was defective, that the defect existed at the time the product left the manufacturer's control, and that the product was the proximate cause of the plaintiff's injuries. Durkin v. Wabash Nat'l, No. 10-2013, 2013 WL 2352612, at *8 (D.N.J. May 29, 2013) (citing Lauder v. Teaneck Volunteer Ambulance Corps, 368 N.J. Super. 320, 331 (N.J. Super. Ct. App. Div. 2004)).

To prove the existence of a defect and that the defect existed while the product was in the control of the manufacturer or seller, a plaintiff may rely on: (1) direct evidence, such as the testimony of an expert who has examined the product or offers an opinion on the product's design; or (2) circumstantial evidence of a defect such as, "proof of proper use, handling or operation of the product and the nature of the malfunction, [which] may be enough to satisfy the requirement that something is wrong with [the product]." Lauder, 368 N.J. Super. at 331 (citing Scanlon v. General Motors Corp., 65 N.J. 582, 591 (1974)). A plaintiff may also establish a defect by "negat[ing] other causes of the failure of the product for which the defendant would not be responsible, in order to make

9

it reasonable to infer that a dangerous condition existed at the time the defendant had control [of the product]." Myrlak v. Port Authority of New York and New Jersey, 157 N.J. 84, 97 (1999) (citing Scanlon, 65 N.J. at 594). When a plaintiff cannot prove a specific product defect, a product defect may be proved by using a *res ipsa loquitor-like* inference, . . . which is available where the harmful incident (1) was of a kind that ordinarily occurs as a result of a product defect; and (2) was not, in the particular case, solely the result of causes other than product defect existing at the time of sale or distribution. N.J. Mfrs. Ins. Group v. Hearth & Home Techs., No. 08-4995, 2010 U.S. Dist. LEXIS 106879, *20 (D.N.J. Oct. 6, 2010) (citing K&G Men's Co. v. Loudmila Kibalko, No. 06-5768, 2010 WL 1931131, *3 (D.N.J. May 12, 2010)) (citations omitted).

However, where the allegedly defective product involves a complex instrumentality, a plaintiff is required to provide expert testimony to assist the trier of fact "in understanding the mechanical intricacies of the instrumentality and in excluding other possible causes of the accident." Mays v. General Binding Corp., No. 11-5836, 2013 WL 1986393, *18 (D.N.J. May 10, 2013) (quoting Lauder, 368 N.J. Super. at 331); see also Elec. Ins. Co. v. Electrolux N. Am., Inc., No. 09-3792, 2011 WL 5825981, at **15-17 (D.N.J. Sept. 19, 2011) (citations omitted); Kolokowski v. Crown

Equip. Corp., No. 05-4257, 2009 WL 2857957, *37 (D.N.J. Aug. 27, 2019). Similarly, in making a prima facie case of negligence, courts require the use of expert testimony to prove breach of duty when the matter to be dealt with is so complex that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the party was reasonable. Ramirez v. General Growth Props., Inc., No. 12-4686, 2012 WL 6627735, *11 (D.N.J. Dec. 16, 2013) (citing Butler v. Acme Markets, Inc., 89 N.J. 270, 283 (1982)).

Quality makes two arguments in relation to plaintiff's claim: (1) Quality does not fit within the NJPLA's definition of a "product seller," therefore, it cannot be strictly liable for plaintiff's injury[4]; and (2) even if it qualifies as a "product

---

[4] See N.J. STAT. § 2A:58C-8 and C-9. Case law instructs that strict product liability applies to a party "engaged in the business" of selling a product which is defective, and not to an occasional seller not engaged in the activity as a regular part of its business. See Straley v. U.S., 887 F.Supp. 728, 749 (D.N.J. 1995) (citations omitted). The Court agrees with Quality and finds it is not a "product seller" pursuant to the statute simply because it zinc plated a bolt for Uintah. See Brown v. Monmouth County Sheriff's Dept. of Corrections & Medical Dept., No. 02-5591, 2005 WL 3527244, at **9-10 (D.N.J. Dec. 22, 2005) (Defendant not a "product seller" pursuant to the NJPLA simply because it entered into a maintenance agreement with a manufacturer to clean and service the weight room equipment alleged to be defective). The Court finds the undisputed facts indicate Quality is "engaged in the business" of zinc plating, not selling bolts. Further, even if Quality is considered a "product seller" and subject to strict liability, summary judgment should still be granted for the reasons discussed herein.

11

seller" for purposes of the NJPLA or if plaintiff pursues a negligence theory, plaintiff's claims against Quality fail for lack of a liability expert. Therefore, the Court must decide if plaintiff must support its claims against Quality with expert evidence. If yes, Quality's motion should be granted since plaintiff does not have an expert. Relevant case law supports Quality.

In Elec. Ins. Co., a fire started in a dryer located in a homeowner's second-floor laundry room and caused extensive damage to the home. Elec. Ins. Co., 2011 WL 5825981, at *1. Plaintiff provided homeowner's insurance to the homeowner and asserted a product liability claim pursuant to the NJPLA against the defendant manufacturer of the dryer. Id. The court held the claim involved a complex instrumentality, and even though jurors have common experience with a dryer, they are not typically aware of its inner electrical design and wiring; therefore, expert testimony was necessary to prove liability. Id. at *15. In Kolokowski, the plaintiff brought various product liability claims against a pallet truck manufacturer after he injured his foot using the product. Kolokowski, 2009 WL 2857957, at *3. Defendants filed a motion *in limine* to exclude plaintiff's expert and argued that without expert testimony, summary judgment should be granted. Id. at *13. The court held plaintiff's expert's testimony was

inadmissible and, further held that the pallet truck constituted a complex instrumentality which required expert testimony. Id. at **36-38. In reaching this conclusion, the court compared the pallet truck with a forklift which has previously been considered a complex instrumentality by another court in this district. Id. (citing Ortiz v. Yale Materials Handling Corp., No. 03-3657, 2005 WL 2044923, *11 (D.N.J. Aug. 24, 2005)).

The Court finds these cases are instructive and controlling. Similar to Elec. Ins. Co., even though a juror might have common experience with a bolt or with a micrograb and understand them generally, they would not be able to understand how the process of zinc plating can affect the qualities of a shoulder bolt. The process of zinc plating involves complex chemical reactions that occur between the metal in the bolt and the layer of zinc that is placed on top of it.[5] Similar to Kolokowski, the bolt is included within a micrograb which is a complex mechanical product. Given the complexity of the process involved, the Court finds a layperson

---

[5] See Susan Kristoff, Zinc Plating Process, SCIENCING (April 24, 2017), https://sciencing.com/zinc-plating-process-5499250.html (last visited Oct. 15, 2019) (Describing the process of zinc plating and stating, "The zinc forms a bond with the steel part, resulting in a transition layer of zinc-steel alloy between the metals . . . . After one to two days of exposure to the atmosphere, the outer surface of the zinc layer becomes zinc oxide. This transformation increases the protection that the zinc layer provides. After an extended period of time of environmental exposure, the zinc oxide converts to zinc carbonate which also acts as a protective layer.").

is not able to understand what occurs to a bolt when it is zinc plated or what other possible causes for a bolt fracture exist. Certainly, without the assistance of expert testimony a juror cannot determine if hydrogen embrittlement was created during the zinc plating process and if this weakened plaintiff's bolt. Further, without the benefit of expert testimony, a juror is not able to determine what a reasonable standard of care in the zinc plating industry is and whether Quality breached its duty of care under a negligence standard.

Based on the foregoing discussion, the Court finds plaintiffs cannot make a prima facie case of product liability against Quality under a negligence or strict liability theory. Liability expert testimony is required to prove Quality is liable and plaintiffs have none. Accordingly, Quality's motion for summary judgment should be granted.

C. Loss of Consortium Claim

Plaintiff Julie Kuhar's claim for loss of consortium in this case is derivative of plaintiff Nicholas Kuhar's personal injury claims and therefore its viability is dependent upon the survival of her husband's claims. Ryan v. Renny, 203 N.J. 37 (2010). Because Quality is entitled to the entry of summary judgment on plaintiff's negligence or product liability claim

under the NJPLA, plaintiff Julie Kuhar's loss of consortium claim is no longer viable, and Quality is entitled to summary judgment on this claim as well.

Conclusion

In conclusion, plaintiffs fail to demonstrate that there are fact questions that need to be resolved to decide Quality's liability. It is plain that plaintiffs cannot support their claims against Quality without expert evidence and they have none. Therefore, plaintiffs' claims against Quality fail as a matter of law and summary judgment should be granted in its favor.

Accordingly, and for the foregoing reasons, it is this 15th day of October 2019, respectfully recommended that Quality's summary judgment motion be GRANTED, and summary judgment should be entered in favor of Quality as to plaintiffs' claims and all cross-claims. Pursuant to FED. R. CIV. P. 72 and L. CIV. R. 72.1(a)(2), the parties shall have fourteen (14) days from the date of this Report and Recommendation in which to file any objections with the Court.

> s/ Joel Schneider
> JOEL SCHNEIDER
> United States Magistrate Judge